## CITY MAGISTRATES COURT — BROOKLYN BOROUGH.

### September, 1918.

## THE PEOPLE v. THE TITLE GUARANTEE & TRUST COMPANY.

PENAL LAW, § 280—TITLE COMPANY MAY NOT PREPARE REAL ESTATE SALE. CONTRACT.

> The preparation by a title company of a contract for the sale and purchase of real property upon the employment of one of the parties constitutes practice of law in violation of section 280 of the Penal Law.

EXAMINATION upon an information laid by a complaining witness, representing the Brooklyn Bar Association, charging the defendant with the rendition of legal services in drawing a contract for the sale of real estate in violation of section 280 of the Penal Law.

*Edward H. Wilson,* for Brooklyn Bar Association.

*William Travers Jerome* and *Harland B. Tibbitts,* for defendant.

McGUIRE, City Magistrate:

The defendant in this proceeding is charged with the unlawful practice of law in violation of section 280 of the Penal Law, in that on the employment of the complaining witness it prepared for execution a contract for the sale and purchase of real property.

From the dawn of civilization the profession of law has been a public institution and the practice of law a public function and privilege.

In the State of New York, by a system of selection adopted under statutory sanction and authority, the privilege of practicing law has been strictly limited to natural persons of good moral character, of ascertained mental capacity and learning, licensed by the State and oath-bound to the honest and faithful discharge of their duty as members of the profession of law.

Thus it became, and has always continued to be, unlawful in this State for any unlicensed person, natural or artificial, to assume to practice law.

The limitation of the privilege and the supervision of the practice of law were not established as a favor or because of any greater obligation of a lawyer to be honest and faithful than of any other hired person.

Honesty and fidelity are moral principles of human conduct without dimension, incapable of measurement or increase or diminution, and universally and equally obligate every person at all times and in every thought, word and action.

The regulation and supervision of the profession and practice of law were based upon the obvious dependence, to a great degree, of public order and public welfare upon the capable and conscientious performance by lawyers of their professional service and duty to their clients and to the State.

A blind man can vision the havoc and chaos which the incompetent or dishonest unregulated practice of law would work in the personal rights and property interests of citizens to the destruction or disturbance of public order and public welfare.

By universal usage and understanding the practice of law has always been held to mean the *business* of doing the law business of another or of advising in relation to it; and by equally universal usage and judicial determination that business has been held to include and consist of the accurate and scientific statement of the *legal* rights and *lawful* wishes and intentions of clients (as in the preparation of every kind of agreement and written instrument), and the assertion and defense of these

rights and wishes and intentions in all transactions and pro-
ceedings either in or out of court.

The creation of a privileged class of public functionaries to
practice law did not and was not intended to take away or
abridge the right of every individual to do his own law business
and to employ such physical aid as he wishes.  But the popular
judgment upon the wisdom of such a man is crystallized in the
old proverb, " A man who is his own lawyer has a fool for a
client; " and the State, solicitous for its own welfare as well as
for the individual welfare, has partially protected that man
from the consequence of his own folly by making it unlawful
for any unlicensed person to seek or accept his employment on
the pretense of being authorized or qualified to perform legal
service.

Doing the law business of the State under its retainer or
employment is the administration of law and the dispensation
of justice, of which the profession of law is the ministry and the
lawyers are the functionaries.  Hence, in private practice the
paramount purpose and motive of the lawyer under the obliga-
tion of his oath or office should always be the *promotion* of
justice, to which every personal desire of gain or advantage of
both client and lawyer should be subordinated.

For many years prior to the enactment of section 280 of the
Penal Law organized greed, a prolific cause of human misery
and woe, made flagrant inroads and aggressions upon the pro-
fession and the practice of law in this State.

Although due administration of existing law could have
punished and suppressed those aggressions, they became so bold
and rapacious that vast property interests in the State, complain-
ing of harassment and vexation from a complicated and per-
nicious system of fees and commissions, appealed to the Legis-
lature for relief and procured the enactment of section 280, a
remarkable bit of unnecessary legislation which, except as a

symptom and warning of a grave public condition, has contributed little but confusion to the situation.

Its enumeration of the things it declares to be unlawful reads like the earnest expression of an aroused conscience, but the exemptions from its operation read like a wretched compromise and a worthless sop to the lobby. It offends every precedent as to form of scientific legislation and every correct rule of construction to claim that the clause purporting to exempt the organizations named in it from the operation of the section contains a grant of power. As to their statutory powers and functions, the section leaves those organizations where it found them. The most that could be claimed by them is that it does not take away any of their chartered powers or privileges. Good morals and the public weal forbid that the Legislature did or could give to any person or class the right to do acts not only theretofore unlawful, but solemnly prohibited and declared unlawful in the same enactment.

The defendant herein is a business corporation established to do a very important and useful business, and not to do or engage in any service or employment, public or private; to transact its own business and not the business of any other person, natural or artificial; to transact its own business *with* and not *for* others. Its business is to sell insurance, and the selling must be done like every other traffic — at arm's length and across the counter.

The claim that there can be any identity of interest of the seller and the buyer in the sale and purchase of insurance any more than in the sale and purchase of any other commodity can scarcely be made in good faith.

The defendant had not and could not have had any interest in the contract referred to in the complaining affidavit. The terms upon which the property was to be sold and purchased concerned only the parties to the contract. No interst which could justify the intervention of the defendant in the negotiations or the contract can be based upon its effort or its hope to sell the

purchased insurance of his title after he had acquired his title.

There is sufficient reason to believe that the preparation of the contract upon the employment of the complaining witness constituted practice of law, and from the evidence and admissions there is sufficient reason to believe that the act of preparing the contract was the act of the defendant.

The defendant is held for the Court of Special Sessions.